USINE USSOP, Plaintiff, *v.* AMERICAN WEST AFRICAN LINE, INC., Defendant.

City Court of New York, New York County, February 9, 1934.

*Jacob Galerston* [*Myron Wisoff* of counsel], for the plaintiff.

*Hunt, Hill & Betts* [*Victor Crawford* of counsel], for the defendant.

MADIGAN, J. Defendant brings on at Special Term a motion to vacate the judgment rendered against it after trial. The application is being disposed of by the same justice who heard the case, without a jury, and decided against defendant, awarding plaintiff $4,800 on the first count and $300 on the second.

Defendant's position now is that this court did not have jurisdiction of the subject-matter, a position not taken until after judgment.

The action was commenced by the service of the summons, which indicated no stated amount of claim. This was followed by the service of a notice of appearance; and the court was not deprived of jurisdiction because plaintiff thereafter served a complaint demanding, both on the first and on the second count, damages in excess of $3,000. (*Connelly* v. *Oceanic Steam Navigation Co., Ltd.*, 144 Misc. 2.)

Plaintiff contends that each of his counts sets forth a "marine cause" (New York City Court Act, § 16, subd. 6; § 17, subd. 2); defendant that neither claim was a "marine cause."

As to the first count, defendant relies upon *McConnell* v. *Williams Steamship Company, Inc.* (143 Misc. 426, 427), where it was said, in the Appellate Term, that "the gravamen of the complaint is negligence and not assault and battery." The complaint so referred to, the pleading considered on the first appeal in the *McConnell* case, after alleging that the plaintiff was "assaulted, beaten and stabbed" with resulting injuries, alleged "that the said assault, beating, stabbing and injuries were due to the negligence" of the defendant; this being followed with several specifications of negligence leading to and concluding with a charge that on account of the negligence indicated the vessel was rendered unseaworthy. There was no charge of an assault by a superior in the course of his employment, the attack leading to the injuries having been made by "members of the crew."

In the complaint here the word "negligence" did not appear. It was alleged that "the plaintiff was ordered by the chief cook to perform some act, which order for sundry reasons the plaintiff was unable to comply with; that thereupon the chief cook, without any just cause or provocation, violently assaulted the plaintiff with a large kitchen knife, stabbing him about the face and left arm, causing severe, serious and permanent injuries. 7. That the act or acts of the chief cook in assaulting and stabbing the plaintiff were done for the purpose of coercing the plaintiff to obey the order of the chief cook as agent of the defendant herein, and for the purpose of otherwise enforcing and maintaining the discipline of the vessel. 8. That the said act and acts of the chief cook were unnecessary and of excessive violence and brutality and in no wise justified. 9. That at all the times hereinafter mentioned and for some time prior thereto, the defendant, its agents, servants and employees had notice of the dangerous and vicious tendencies of the chief cook, in that the said chief cook of said steamship, *West Irmo*, while on the high seas had heretofore attempted to assault other members of the crew and officers of the said steamship, *West Irmo*, and that immediately prior to the assault herein complained of, the said chief cook attempted to assault and stab the plaintiff herein, but that said assault was prevented by officers of said Steamship *West Irmo*. 10. That although the defendant knew of the vicious tendencies of said chief cook while in its employ, the said defendant failed to discipline the said chief cook, thereby taking the necessary precautions to prevent him from inflicting any damages upon any officers or members of the crew of said Steamship *West Irmo*, but permitted him to continue in its employ and to handle dangerous weapons."

The memorandum in this case announcing judgment for plaintiff on both counts read in part as follows: "Apparently the two scenes of midafternoon May 14, 1933, constituted one incident arising out of the chief cook's protection of the ship's food supplies. Performing that duty Paden lost control of himself, not to calm down again until after he had injured plaintiff with the carving knife. Ussop would not have been seriously hurt had defendant ended the trouble, as it readily could, when the ship's officers had Paden in the port passageway. His belligerent disposition was apparent to the court at the trial and his testimony emphasized it. That defendant had notice of it is indicated by the record. After the pocketknife had been taken from him he should have been kept in restraint, at least temporarily. That he had not cooled off and that he had taken on a bellicose attitude is shown by evidence to the effect that he was not easily deprived of the open pocketknife.

The excitement had not subsided. The officers must have perceived that Paden would continue the matter, as he immediately did; and it was manifest that he might seize some dangerous implement. Merely to take the pocketknife from the first cook and to caution him was not to exercise due care — care proportioned to the danger. Paden's story as to what happened when he went round to the galley door on the starboard side is improbable. That he was the aggressor is established by a preponderance of the evidence by which, also, he is shown in both scenes to be first to take a weapon."

As indicated by such memorandum, the court, the trier of fact, believed that on the pleadings and by the evidence plaintiff had made out a cause of action for assault, and that defendant, during the assault, having had the chief cook in restraint, should not have released him, should not have thus allowed him to proceed with the assault. In this case the gravamen of plaintiff's first cause of action, as it was alleged, is assault. As to certain details not affecting the nature of said cause of action, the court considered the complaint amended to conform to the proof. Such an amendment, a mere formality, could have been sought and obtained at the conclusion of the trial.

The references in the complaint and in the court's memorandum to matters which, standing alone, might have indicated a cause of action sounding in negligence, including the reference to lack of due care, considered in their actual setting, referred to defendant's conduct in allowing the chief cook to continue assaulting plaintiff. By standing back when obviously they should have afforded protection, thus allowing the first cook, whose disposition and condition were known to them, to proceed with the assault, the officers acquiesced in it. (*Avery* v. *Bulkly*, 1 Root [Conn.], 275.) The complaint and the proof showed that the gravamen of the action was assault.

In this case defendant went to trial on the merits, raising no jurisdictional question until after judgment against it. Under such circumstances, the court will not strain to so construe the cause of action as to divest itself of jurisdiction it acquired prior to the service of the complaint.

Were it necessary, inquiry might also be pertinent as to the effect of a notice on the face of the summons, which read: "Action for personal injuries arising from assault on SS. *West Irmo* on or about May 14, 1933."

The complaint in this action referred to the Federal statute (Merchant Marine Act, § 33 [U. S. Code, tit. 46, § 688]; Federal Employers' Liability Act [U. S. Code, tit. 45, §§ 51–59]) which makes applicable acts of Congress modifying or extending common-

law rights or remedies in cases of personal injury to railway employees. Plaintiff thus invoked the ruling of *Jamison* v. *Encarnacion* (281 U. S. 635; 50 S. C. R. 440; 74 L. Ed. 1082), to the effect that the term " negligence " as employed in such acts of Congress is sufficiently broad and comprehensive to include " assault." There is no warrant whatever for the suggestion that, by referring in the complaint to the Federal statute, plaintiff intended to claim for " negligence " rather than for " assault." The facts alleged and the case tried show plaintiff's claim was for assault.

In the complaint considered on the first appeal in *McConnell* v. *Williams Steamship Company, Inc. (supra)*, all the allegations of the first count were incorporated into the second count for maintenance and cure, under which count, therefore, the plaintiff could have proved the cause of action alleged in the first count. Accordingly it was necessarily held as to the second count, as well as in relation to the first, that this court did not have jurisdiction. In the present case also plaintiff incorporated into his second count, for maintenance and care in the sum of $25,000, all the allegations of his first cause of action. But inasmuch as here the first cause of action sounded in assault, and in *McConnell* v. *Williams Steamship Company, Inc. (supra)*, the first cause of action sounded in negligence, the decision as to the second count, on the first appeal in the *McConnell* case, would not be in point, even if in this case the complaint had been served with the summons.

In relation to the second count here it is also to be noted that the court, having jurisdiction prior to the service of the complaint, could have entertained an amendment reducing to $3,000 the amount claimed on the second count. (*Connelly* v. *Oceanic Steam Navigation Co., Ltd., supra.*) Though on that count the complaint here demands damages in the sum of $25,000, only $300 was awarded. An application to reduce the demand from $25,000 to $3,000, or to any lesser amount, would have been granted as a matter of course. After judgment the court will deem such an amendment to have been made. (*Henry* v. *Crook*, 202 App. Div. 19; *Piotrowski* v. *Cervi*, 210 id. 681; *Ajello* v. *Ajello Co., Inc.*, 214 id. 729.)

It is unnecessary to consider the argument for plaintiff to the effect that a cause of action to recover damages for failure to furnish maintenance and care is a " marine cause." It might be observed, however, that the claim for maintenance and care is incidental to that for damages arising out of the assault and here it is so alleged; the first count being repeated in the second. Moreover, failure to furnish maintenance and care, judicially described as " wages in another form " (*Harden* v. *Gordon*, 11 Fed. Cas. 480, at p. 482, No. 6047, citing *The Madonna D'Idra*, 1 Dods. 37), is a breach of the

contract for services. It may reasonably have been the intent of subdivision 1 of section 17 of the New York City Court Act to include a claim such as plaintiff makes in his second count. (See generally *Pacific Steamship Company* v. *Peterson*, 278 U. S. 130, at p. 138; 49 S. Ct. 75; 73 L. Ed. 220.)

The motion is denied.